IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MAXINE JOHNSON,                    §
                                   §
                    Plaintiff,     §
                                   §  Civil Action No. 3:10-CV-0246-D
VS.                                §
                                   §
MICHAEL J. ASTRUE,                 §
COMMISSIONER OF SOCIAL             §
SECURITY,                          §
                                   §
                    Defendant.     §

MEMORANDUM OPINION

Plaintiff Maxine Johnson ("Johnson") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits under Title II of the Act. For the reasons that follow, the Commissioner's decision is affirmed.

I

Johnson was born in 1955 and was 51 years old at the time of her application. She obtained a Master's Degree in Business Administration and worked as a marketing representative, manager, budget analyst, and production coordinator until 1999. On February 12, 2007 Johnson applied for social security benefits, alleging disability beginning February 1, 1999. Her application was denied initially and upon reconsideration. Johnson requested a hearing, during which she amended her disability onset date to March 1,

2006.  Following the hearing, an Administrative Law Judge ("ALJ")
found that Johnson was not disabled under the Act from February 1,
1999 through September 30, 2006, the date last insured.[1]

The ALJ's decision followed the five-step sequential process
for determining disability.  *Leggett v. Chater*, 67 F.3d 558, 563
(5th Cir. 1995).  At step one, the ALJ found that Johnson did not
engage in substantial gainful activity between the revised onset
date of March 1, 2006 and September 30, 2006, the date last
insured.  At step two, he found that, through the date last
insured, Johnson had the following severe impairments:
fibromyalgia, chronic fatigue immune deficiency syndrome,
arthritis, hypertension, diabetes, and asthma.  At step three, the
ALJ found that, singularly or in combination, her impairments did
not meet or medically equal one of the listed impairments in 20
C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ determined that,
through the date last insured, Johnson had the residual functional
capacity ("RFC") to perform the full range of light work, as
defined in 20 C.F.R. § 404.1567(b).  At step four, the ALJ found
that, through the date last insured, Johnson's RFC would allow her
to perform her past relevant work as a "marketing
representative/logistics analyst."  R. 24.  This job requires that

---

[1]The ALJ determined that September 30, 2006 was "the date last
insured" based on Johnson's earnings record that showed that she
had acquired sufficient quarters of coverage to remain insured
through that date.

she sit for a total of 8 hours, walk and stand for 30 minutes each, and lift and carry less than 10 pounds, which is consistent with the requirements of sedentary work. Because the ALJ concluded at step four that Johnson was not under a disability, as defined in the Act, at any time from March 1, 2006, the alleged onset date, through September 30, 2006, the date last insured, he did not proceed to step five.

Johnson sought review by the Appeals Council, which denied her request initially and after considering additional evidence that Johnson submitted. She now seeks judicial review on the basis of four principal arguments: first, the ALJ allowed her case to suffer prejudice by permitting ineffective assistance of counsel; second, the ALJ did not fully and fairly develop the record because he failed to request some of Johnson's medical records and additional evaluations; third, the ALJ improperly assigned little weight to a treating physician's opinion and did not consider all relevant ailments in formulating Johnson's RFC; and, fourth, the ALJ's step four analysis did not appropriately compare Johnson's RFC to the demands of her previous employment.[2]

## II

The court's review of the Commissioner's decision is limited to determining whether substantial evidence supports the decision

---

[2]Johnson identifies five issues in her brief, but they present, and are organized in her brief according to, these four arguments.

and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). "The Commissioner's decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnotes omitted).

"The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). "If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner's decision must be affirmed." *Martinez*, 64 F.3d at 173. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It is more than a mere scintilla, and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). "To make a finding of 'no substantial evidence,' [the court] must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio v.*

*Heckler*, 705 F.2d 123, 125 (5th Cir. 1983).  Even if the court should determine that the evidence preponderates in the claimant's favor, the court must still affirm the Commissioner's findings if there is substantial evidence to support these findings.  *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985).  The resolution of conflicting evidence is for the Commissioner rather than this court.  *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, "disability" means an "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner uses a five-step sequential inquiry.  *Leggett,* 67 F.3d at 563; *Martinez,* 64 F.3d at 173-74.  The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy.

*Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2010). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan,* 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)). "The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant

shows that he was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

### III

### A

Johnson first contends that this case should be remanded because she received ineffective representation at her hearing before the ALJ, which caused her clear prejudice or unfairness. Johnson recognizes that there is no constitutional or statutory right to competent counsel in Social Security cases or in civil cases generally. She cites authority from the Tenth Circuit, *Banta v. Chater*, 94 F.3d 655, 1996 WL 477298 (10th Cir. 1996) (unpublished opinion), however, for the premise that ineffective representation may require a remand where there has been a showing of clear prejudice or unfairness. Johnson also posits that the ALJ must ensure that a claimant's rights are adequately protected, regardless whether the claimant is represented by counsel.

Johnson maintains that, at the hearing before the ALJ, her counsel amended her date of onset to within six months of her date last insured, restricting her case to a short window of time and causing her prejudice given the volume of medical records prior to that date. She complains in her reply brief that the ALJ allowed her counsel to make this amendment, and that the ALJ noted the

prejudice that Johnson would suffer if her onset date were amended, but that he failed to ask her whether she realized the consequences of the amendment. Citing *Sims v. Apfel*, 530 U.S. 103, 120 (2000), Johnson asserts that the ALJ should have investigated the facts and developed the arguments both for and against amending the onset date. She maintains that it was unreasonable to render years of treatment irrelevant as falling outside the six-month period of March through September 2006, because Chronic Fatigue Syndrome ("CFS") can only be diagnosed after other possible causes for the symptoms have been ruled out. She also posits that she suffered from several other impairments besides fibromyalgia and Chronic Fatigue Immune Deficiency Syndrome ("CFIDS"), and that she would not have acquiesced in the amendment had she known that the ALJ would be able to ignore the majority of her medical records. For these reasons, she urges that the case should be remanded to correct the prejudice caused by the amended onset date.

Johnson also contends that her attorney erroneously relied on the statement of Kelly Boulden, M.D. ("Dr. Boulden") that her fibromyalgia has gone undiagnosed for years and had begun as early as March 2006, whereas Don E. Christiansen, D.O. ("Dr. Christiansen") diagnosed her fibromyalgia in February 2004. Citing *Goldberg v. Kelly*, 397 U.S. 254 (1970), Johnson maintains that the representation she received fell below what the Supreme Court expects of counsel in cases where administrative actions are being

scrutinized and counsel are expected to safeguard the interests of the individual. She contends that a remand is warranted to correct the prejudice she suffered.

Citing *Brandyburg v. Sullivan*, 959 F.2d 555, 562 (5th Cir. 1992), the Commissioner responds that Johnson is not entitled to relief. He argues that while the Supreme Court in *Goldberg* stated that welfare recipients must be allowed to retain counsel at an administrative hearing, the Court did not indicate that the agency conducting the hearing must ensure quality representation. The Commissioner also cites the regulatory qualifications for a claimant's representation set out in 20 C.F.R. § 404.1705, and he contends that Johnson has shown no reason why her counsel, as a duly licensed attorney, was not fully qualified to represent her.

The Commissioner also maintains that, assuming that Johnson was entitled to effective assistance of counsel, the record does not show that her counsel was deficient. The Commissioner contends that Johnson's counsel reasonably amended the alleged onset date to March 1, 2006 based on a letter from Dr. Boulden that opined that Johnson's medical impairments were so severe on March 1, 2006 that she was unable to work. Finally, the Commissioner points out that the cases on which Johnson relies are not binding on this court, and he posits that they do not support her argument.

Johnson is not entitled to relief based on her claim of ineffective assistance of counsel. Although a claimant may retain an attorney to represent her at a social security hearing, there is no right to counsel or guarantee of effective representation at such hearings or in civil litigation generally. "The Supreme Court has never recognized a constitutional right to counsel at an SSA hearing." *Brandyburg*, 959 F.2d at 562; *see also* 20 C.F.R. § 404.1705 (2010) (prescribing regulatory qualifications for claimant's representation); *see also Sanchez v. U.S. Postal Serv.*, 785 F.2d 1236, 1237 (5th Cir. 1986) ("[T]he sixth amendment right to effective assistance of counsel does not apply to civil proceedings."). Nor has the Fifth Circuit recognized a statutory or regulatory right to effective assistance in the context of a claim for social security benefits. Johnson relies on *Banta*, an unpublished Tenth Circuit opinion, to argue that ineffective representation may require a remand where there has been a showing of clear prejudice or unfairness. But the Fifth Circuit has not adopted a right to effective assistance of counsel in this context.

Even if Johnson had such a right, she has not shown the type of clear prejudice or unfairness that is required for a remand.[3]

_____

[3]Even if there were a right to effective assistance, one of the cases that Johnson cites shows that a remand is only required in egregious cases. *See, e.g., Arms v. Gardner*, 353 F.2d 197, 199 (6th Cir. 1965) (remanding social security claim where, *inter alia*, attorney took no part in examining witnesses, offered no testimony,

Johnson's argument is that, by amending the onset date, her counsel enabled the ALJ to focus on a six-month period (March 1, 2006 through September 30, 2006)[4], and thereby to disregard the majority of her medical records and years of treatment that revealed multiple impairments besides fibromyalgia and CFIDS and that enabled a diagnosis of CFS to be made. But the ALJ stated in his decision that he had considered "the entire record," R. 20 and 21, and "all the evidence," *id*. at 18. The ALJ did not explicitly restrict his consideration of the evidence to the period March through September 2006, and there are indications in his decision that he assessed evidence outside that temporal range. *See, e.g., id*. at 21 ("[Johnson] testified that she stopped working in 1999 due to depression, pain, and fatigue, and was never able to return to work."); and 23 ("[Johnson] reported that she had been fatigued for 20 years and that her symptoms started gradually in the mid 1980's."). And the ALJ concluded near the beginning of his decision, "[a]fter careful consideration of all the evidence," that Johnson "was not under a disability . . . *from February 1, 1999* [i.e., the first onset date that she alleged] through the date last insured [September 30, 2006]." R. 18 (bracketed material and emphasis added).

Nor is Johnson's reliance on a variation of her ineffective

_____

and gave no apparent legal assistance).

[4]This period is actually closer to seven months.

assistance of counsel claim——that the ALJ erred by failing to investigate the facts and develop the arguments for and against amending the onset date——sufficient to warrant a remand.[5] Although it is settled that "[S]ocial Security proceedings are inquisitorial rather than adversarial," *Sims v. Apfel*, 530 U.S. 103, 120 (2000), and that the ALJ must fully and fairly develop the facts relating to a claim before making a disability determination, *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000); *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam), Johnson has not shown that these principles have been extended or applied to impose on an ALJ the obligation to assess independently the decisions made by a claimant's counsel during a hearing.

Further, even if the ALJ erred in this respect, Johnson has failed to show the type of clear prejudice or unfairness that is required for a remand.  Because the ALJ based his decision on records predating the amended onset date, his decision did not turn on Johnson's counsel's decision to amend the onset date at her administrative hearing.  Johnson has not shown how the ALJ's decision would have been different had counsel not amended her onset date.  Accordingly, Johnson has not suffered the requisite

---

[5]Although Johnson discussed in her opening brief the ALJ's reaction to the decision of her counsel to amend the date last insured, she did not plainly make this argument until her reply brief.  Although the court could reject the argument on the ground that she did not adequately raise it until her reply brief, the court will address and reject it on the merits.

prejudice to warrant remand, and she is not entitled to relief based on her claim of ineffective assistance of counsel.

IV

A

Johnson's second argument is that the ALJ failed to develop the record properly, thereby prejudicing her claim. This argument rests on the following constituent claims.

First, after the ALJ expunged the medical records of the wrong patient received from Michael L. Freeman, M.D. ("Dr. Freeman"), one of Johnson's treating physicians, the ALJ failed to request Johnson's records from Dr. Freeman so that he could develop the record as to Johnson's vocational limitations, her RFC, and her past relevant work, and how her occupational base may be eroded by her limitations.

Second, the ALJ failed to obtain a consultative examination ("CE") or medical expert ("ME") testimony. Johnson contends that, by the time her case reached the ALJ, the only state agency medical opinions in the record were summary denials, and the state agency never requested a CE and (as the ALJ himself recognized) never issued physical or mental RFC assessments. She posits that, despite the lack of another medical source evaluation of Johnson's RFC, the ALJ still assigned little weight to Dr. Boulden's opinion, which was the only medical opinion on Johnson's RFC. She argues that, because the ALJ did not explain the medical evidence on which

- 13 -

he based his RFC finding that Johnson was capable of performing a full range of light work, the ALJ was required in the absence of Dr. Boulden's assessment otherwise to develop a full and fair record. She maintains that, to do so, the ALJ was required to order a CE by an impartial ME. Johnson also contends that the ALJ should have ordered a mental status examination to determine the extent to which Johnson's nonexertional impairments inhibited her ability to return to work or, alternatively, the ALJ should have called a physical and psychological ME to testify. Johnson maintains that this error was prejudicial because Dr. Boulden's opinion and assessment, to which the ALJ assigned little weight, was the only medical evidence as to Johnson's RFC, and this error alone is sufficient for reversal.

Johnson also argues that the ALJ erred by failing to call a vocational expert ("VE"). According to Johnson, under the social security regulations, a VE is to offer relevant evidence within his expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed the work or as generally performed in the national economy. And a VE may also offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairments can meet the demands of the claimant's past relevant work, either as the claimant actually performed it or as generally

performed in the national economy.  She complains that, rather than soliciting the help of a VE, the ALJ relied on his unsupported RFC findings to conclude that Johnson could return to her past work as a marketing representative and analyst, thereby prejudicing her because the ALJ failed to account for the limitations caused by all of her impairments and how they eroded her occupational base.

The Commissioner responds that the ALJ properly developed the record in accordance with this obligation to do so adequately.  He requested Johnson's medical records from Dr. Freeman, but Johnson objected at the hearing that the records were not hers, and, although Johnson was in the best position to obtain the correct records, she did not do so.  The Commissioner posits that the regulations place on Johnson the responsibility to provide medical evidence showing the existence of an impairment, its severity, and how the impairment affects her functioning.  He submits that Johnson showed she could produce correct records by submitting others during the hearing, and that any lack of medical evidence is the direct result of Johnson's failure to meet her burden by obtaining correct records rather than the fault of the ALJ.  He maintains that it is not unreasonable to require Johnson to provide information about her medical condition since she is in a better position to do so.  The Commissioner contends that, because Johnson did not provide the correct medical records, the ALJ properly made his decision based on available information.

The Commissioner also argues that, assuming the ALJ did not adequately develop the record, his decision is not reversible on this basis unless Johnson shows prejudice. The Commissioner posits that, to establish prejudice, Johnson must show that she could and would have adduced evidence that might have altered the result. According to the Commissioner, Johnson has not shown how her medical records from Dr. Freeman——had they been supplied to the ALJ——would have altered the ALJ's decision.

Concerning the ALJ's failure to obtain a CE or state agency RFC assessment, the Commissioner argues that the decision to order a CE is discretionary, and that it is questionable whether such an examination, ordered more than one year after Johnson's date last insured, would have effectively established her condition in 2006. He maintains that the ALJ considered all of Johnson's medical evidence in the record from the relevant period; that while the regulations permitted the ALJ to obtain a CE after assigning "little weight" to Dr. Boulden's opinion, they did not require him to do so; and that when, as here, the record is adequately developed to permit the ALJ to make an informed disability decision, the ALJ does not have a duty to order a CE.

The Commissioner attempts to distinguish two cases on which Johnson relies, asserting that in both instances the ALJ improperly rejected a treating physician's opinion that was consistent with the evidence and that, here, Dr. Boulden's opinion is not similarly

supported.  The Commissioner maintains that the regulations do not require a state agency or ME opinion regarding a claimant's RFC, that the ALJ is responsible for that determination, and the state agency opinions in this case related to whether Johnson's impairments met or equaled a listed impairment at step three. Regarding Johnson's contention that the ALJ should have called a VE, the Commissioner argues that the ALJ determined at step four that Johnson was able to return to her past relevant work, and expert testimony is not required when a claimant is found not disabled at step four.

Concerning Johnson's argument that the ALJ did not properly develop the record regarding her alleged mental impairment, the Commissioner maintains that the regulations provide that the claimant is responsible for providing medical evidence that shows the existence of an impairment, its severity, and how it affects her functioning.  He argues that Johnson has provided insufficient evidentiary support for a medically determinable and severe mental impairment.  The Commissioner cites as an example that Johnson has provided no evidence of a formal psychiatric diagnosis, hospitalizations, or mental health treatment or ongoing significant therapy other than prescribed medicine from her family practitioner.  He contends that isolated references in the record to a mental disorder are inadequate to require that an ALJ fully investigate the possibility of a mental impairment.

"[S]ocial Security proceedings are inquisitorial rather than adversarial." *Sims*, 530 U.S. at 120. The ALJ must fully and fairly develop the facts relating to a claim before making a disability determination. *Carey*, 230 F.3d at 142; *Brock*, 84 F.3d at 728. Section 404.1512(d) requires the Commissioner to develop a claimant's complete medical history for "at least the 12 months preceding the month in which [the claimant] filed [the] application unless there is reason to believe that development of an earlier period is necessary or unless [the claimant] say[s] that [the] disability began less than 12 months before [the claimant] filed [the application]." 20 C.F.R. § 404.1512(d) (2010); *see also* 20 C.F.R. § 404.1512(d)(1)(2010). Johnson acknowledges that her last visit to Dr. Freeman occurred in 1999, more than 12 months before she filed her application for disability benefits in 2007. Thus 20 C.F.R. § 404.1512(d) did not require that the ALJ request Johnson's records from Dr. Freeman.

Moreover, even if the ALJ had a duty to obtain these records to fully and fairly develop the record, Johnson has not shown that she was prejudiced by the ALJ's failure to do so. "The court will not reverse the decision of an ALJ for failure to fully and fairly develop the record unless the claimant shows that he or she was prejudiced by the ALJ's failure." *Carey*, 230 F.3d at 142. "To

establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Id.* (quoting *Kane*, 731 F.2d at 1220). Johnson does not explain how consideration of her medical records from Dr. Freeman could or would have altered the ALJ's decision. In her opening and reply briefs, Johnson essentially relies on the premise that such a failure is of itself reversible because Dr. Freeman was her primary care physician for three years; when the evidence received from a treating physician is inadequate, the Commissioner should re-contact the doctor and request additional information; and because the failure to do so violates the Commissioner's regulations, the resulting decision cannot stand. P. Reply Br. 3. This line of reasoning—which at best explains why the failure is error rather than why it is prejudicial—is insufficient to demonstrate reversible error.

2

Nor is Johnson entitled to reversal based on the ALJ's failure to obtain CEs. Under 20 C.F.R. § 404.1519a(b) and 20 C.F.R. § 404.1517, an ALJ may order a CE when "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision" on a disability claim. 20 C.F.R. §§ 404.1517 and 404.1519a(b) (2010). The ALJ is not required to order a CE, however, "unless the record establishes that such an examination is necessary to enable the [ALJ] to make the disability decision."

*Pierre v. Sullivan*, 884 F.2d 799, 802 (5th Cir. 1989) (per curiam) (quoting *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)).

Johnson argues that the ALJ was required to order various CEs because the evidence was otherwise insufficient to support his disability determination. Specifically, she posits that the ALJ's decision to assign little weight to Dr. Boulden's opinion that she had been disabled since at least 2006 otherwise left the ALJ insufficient evidence to support his decision. The court disagrees. Even if the ALJ had entirely disregarded Dr. Boulden's opinion, "the absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete." *Gutierrez v. Barnhart*, 2005 WL 1994289, at *7 (5th Cir. Aug. 19, 2005) (unpublished opinion) (per curiam) (citing *Ripley*, 67 F.3d at 557). Although the ALJ assigned little weight to Dr. Boulden's opinion, he considered her opinion as well as conflicting evidence in making his ruling. The ALJ's decision recites Johnson's complaints as recorded in her medical records on file with Dr. Boulden, the various treatments Dr. Boulden applied to Johnson's conditions, and Johnson's specific physical limitations, including the amount of time she could spend each day completing various activities and the amount of weight she could bear for certain periods of time. Before concluding that Johnson was not disabled, the ALJ weighed this evidence against evidence that conflicted with some of Dr. Boulden's findings and that

established that Johnson's symptoms were less severe than alleged. The record contains sufficient evidence to support the ALJ's determination despite his decision not to order various permissive CEs.

3

Johnson's contention that the ALJ erred by failing to obtain ME testimony fails for a similar reason. "[T]he regulations do not mandate that the ALJ ask for and consider opinions from medical experts[.]" *Atkins v. Barnhart*, 119 Fed. Appx. 672, 674 (5th Cir. 2005) (per curiam). The failure to use an ME does not mandate reversal unless the claimant shows that ALJ did not fulfill his duty to adequately develop the record and that this failure prejudiced the claimant. *Id.* Johnson has not made the required showing to obtain reversal on this basis.

4

Nor was the ALJ obligated to call a VE to testify. Johnson contends that the ALJ should have obtained VE testimony concerning the physical and mental demands of her past relevant work, and should have obtained a VE opinion about whether, with her medical impairments, she could meet the demands of her past relevant work. She argues that the ALJ relied on his unsupported RFC findings to conclude that she could return to her past work as a marketing representative and analyst, without accounting for all of her limitations. "The testimony of a vocational expert is required if

a claimant has adverse conditions that are not taken into account in the medical-vocational guidelines (the "Guidelines") set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2." *Prince v. Chater*, 77 F.3d 479, 1996 WL 46826, at *3 (5th Cir. Jan. 16, 1996) (unpublished opinion); *see also Eichelberger v. Chater*, 71 F.3d 879, 1995 WL 727559, at *4 (5th Cir. Nov. 24, 1995) (per curiam) ("If reliance upon the Grid is proper, testimony from a vocational expert is unnecessary."). And the testimony of a VE is not required when the ALJ determines at step four that a claimant can perform her past relevant work. *See Talbert v. Shalala*, 44 F.3d 1004, 1994 WL 733486, at *5 n.6 (5th Cir. Dec. 27, 1994) ("This testimony was not necessary because the ALJ determined at step four that [the claimant] could perform her past relevant work and was not disabled." (citing 20 C.F.R. § 404.1566(e); *Harper v. Sullivan*, 887 F.2d 92, 97 (5th Cir. 1989))).[6] Accordingly, because Johnson has not demonstrated a basis to conclude that the testimony of a VE was required in her case, she has not shown reversible error.

---

[6]Although VE testimony is not *required*, it is *permissible* at step four. *See, e.g., Joseph-Jack v. Barnhart*, 80 Fed. Appx. 317, 317 (5th Cir. 2003) (per curiam) ("[Plaintiff's] argument that it was inappropriate for the ALJ to consider the opinion of a vocational expert (VE) at Step Four of the sequential evaluation process is also rejected; we have never held as such and have condoned the use of a VE to supply information about the claimant's past work." (citing *Shave v. Apfel*, 238 F.3d 592, 594 (5th Cir. 2001); *Leggett*, 67 F.3d at 563-64). Nevertheless, Johnson has not shown reversible error on this basis.

Johnson contends, third, that the ALJ's RFC finding that she is capable of performing a full range of light work is not supported by substantial evidence.

Johnson's first constituent argument in support of this contention is that the ALJ improperly assigned "little weight" to a treating source specialist opinion because there is no other medical evidence to support rejecting the opinion.  She maintains that the ALJ must give "controlling weight" to a treating physician's opinion as to the nature and severity of a claimant's impairments when the opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with the other substantial evidence in the record, and that the ALJ may only assign less weight to a treating physician's assessment where "good cause" is shown.  Johnson argues that, absent reliable evidence from a treating or examining source controverting the claimant's treating physician, the ALJ cannot reject the opinion of the treating physician unless he performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d) and articulates specific reasons for doing so. Johnson also posits that, even if the ALJ determines that the treating physician's records should not receive controlling weight, he must seek clarification from the treating physician absent other

evidence. She argues that the ALJ neither demonstrated good cause for how he weighed Dr. Boulden's opinion nor made a factual determination based on his assessment of competing first-hand medical evidence. Johnson contends that the ALJ rejected Dr. Boulden's opinion without clearly considering each of the six factors set forth in 20 C.F.R. § 404.1527(d) and without fully describing his reasons for doing so; that the ALJ improperly discarded Dr. Boulden's opinion without any medical evidence to support his conclusion; and that, because no medical source has ever averred that Johnson is capable of the full range of light work, the ALJ was obligated to perform a detailed analysis of Dr. Boulden's views under the criteria set forth in 20 C.F.R. § 404.1527(d) before assigning little weight.

Johnson contends that Dr. Boulden's opinion should have been given great, if not controlling, weight, especially because the record contains no other opinions regarding her RFC. She points out that, at the time Dr. Boulden completed her assessment and wrote the letter expressing her opinion, she had treated Johnson for nearly two years; in 2006 and 2007, Dr. Boulden had nearly monthly contact with Johnson; she continued to maintain regular contact with Johnson throughout 2008 and 2009; she provided a comprehensive treatment for Johnson's fibromyalgia and CFIDS; and she oversees Johnson's pain management, sleep disorders, cognition problems, nutrition and energy needs, immunology and chronic

infection problems, and thyroid and hormonal supplement.

The Commissioner responds that the ALJ's decision is supported by substantial evidence. He argues that the ALJ considered Johnson's medical records prior to September 30, 2006 (her date last insured); that her treating physician, Dr. Christiansen, treated her from December 1998 to July 2006 with prescribed medications for fibromyalgia, non-insulin dependent diabetes, asthma, and nasal allergies; the records show that Dr. Christiansen treated Johnson conservatively; and his examination records in November 2001 and February 2004 reveal that Johnson had normal gait, balance, and reflexes with no noted restrictions. The ALJ also considered Johnson's medical records from Jay Gartner, M.D. ("Dr. Gartner"). The ALJ observed that Dr. Gartner had treated Johnson for asthma and intermittent respiratory problems, with cough, nasal congestion, and sore throat symptoms. The Commissioner posits that, although Johnson was treated frequently, the records do not reveal that her treatment was unsuccessful in controlling her symptoms or that she underwent hospitalizations because her treatment regimen failed.

The Commissioner also maintains that the ALJ properly examined the medical records from Dr. Boulden; he noted the doctor's examination findings and diagnoses of fibromyalgia, chronic fatigue, and immune deficiency syndrome; and he found that Dr. Boulden's September 10, 2008 statement that Johnson was disabled

beginning in March 2006 was not a medical opinion, but one that required familiarity with the regulations and legal standards under the Act. The Commissioner points out that a determination of disability is reserved to the Commissioner and that opinions regarding issues reserved to the Commissioner are not given controlling weight or special significance. He posits that because Dr. Boulden's opinion regarding Johnson's disability was not a medical opinion, it was not entitled to controlling weight or special significance. He also argues that the regulations did not require the ALJ to discuss the factors in 20 C.F.R. § 404.1527(d) when evaluating Dr. Boulden's statement that Johnson was disabled because these factors only apply to medical opinions, not to opinions reserved to the Commissioner.

The Commissioner also points out that the ALJ concluded that the evidence contradicted Dr. Boulden's opinion regarding Johnson's limitations prior to March 2006. The ALJ noted that, although Dr. Boulden did not begin treating Johnson until October 30, 2006, she checked boxes in a pre-prepared statement provided by Johnson's counsel indicating that, prior to March 2006, Johnson was able to lift and carry at least five pounds, stand and walk for only 30 minutes in an 8-hour workday, and sit for fewer than 6 hours in an 8-hour workday. Dr. Boulden also opined that Johnson was unable to stoop or crouch, and was able to climb, balance, and crawl occasionally, but her records do not reveal any documented

limitations, abnormalities of gait, or abnormal movement of Johnson's extremities, nor do they indicate that Johnson was hospitalized because her condition became uncontrollable. The Commissioner contends that Dr. Christiansen's records do not support Dr. Boulden's opinion because Dr. Christiansen documented mostly normal examination findings and treated Johnson conservatively. The Commissioner also maintains that the ALJ considered conflicting testimony by Johnson when evaluating Dr. Boulden's opinion, which is a factor that the ALJ can consider. The Commissioner therefore argues that Johnson's contention that the ALJ did not consider the 20 C.F.R. § 404.1527(d) factors is without merit. The Commissioner maintains that an ALJ may give less weight, little weight, or even no weight to a doctor's statement that is not supported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence, and that the ALJ, not a physician, is responsible for determining whether a claimant is disabled.

Johnson's second predicate ground is that the ALJ failed to incorporate into his RFC analysis all exertional and nonexertional limitations caused by all of Johnson's impairments: morbid obesity; nonexertional limitations; and chronic respiratory infections, allergies, and asthma. She posits that the ALJ must consider all medically determinable impairments of which he is aware, including those that are not severe; the ALJ must consider the combined

effect of impairments; and, in assessing RFC, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, which is defined as 8 hours a day, 5 days a week.

Specifically, Johnson contends that the ALJ failed to discuss how obesity affected her other impairments or her RFC and that the ALJ must consider whether a claimant's obesity, in light of her overall condition, causes her to meet or equal a listing at step three when finding the claimant's RFC. Although Fifth Circuit precedent is limited, Johnson cites cases from other circuits requiring that ALJs evaluate the cumulative effect of obesity and the claimant's other impairments. She relies on decisions from the Third and Seventh Circuits in which cases were remanded where the ALJ found severe obesity but did not discuss the combined effect of the claimant's impairments in light of obesity. Johnson argues that the issue of her obesity was squarely before the ALJ because the state agency considered it among the alleged impairments in its initial determination, her attorney identified her height and weight at her hearing, and she specifically alleged in her hearing brief that it is a severe impairment. She states that the record reflects that various treating and examining physicians have noted her obesity, that her body mass index has fluctuated over the years, and that she has tried various weight loss methods with varying degrees of success. Johnson argues that her obesity

contributes to her medical problems, and she asserts that the ALJ's failure to consider and discuss the record evidence of her obesity prejudiced her claim because he therefore failed to consider the limitations caused by her obesity when formulating her RFC.

Regarding her nonexertional limitations, Johnson contends that, in his written decision, the ALJ stated that Johnson testified that she does not feel that she suffers from depression anymore, but the ALJ failed to recognize that it is important whether she was limited by mental impairments during the relevant period (March 1 to September 30, 2006). Johnson maintains that she may not have been depressed by the time she finally appeared before the ALJ for a hearing in September 2008, and that the ALJ never discussed her loss of memory and other cognition problems. She maintains that her memory loss is significant when compared to her prior capacity because she is highly educated and holds a master's degree. She cites as an example that, in a form submitted to the state agency, she stated that her new primary physician is "Dr. Baxter" since Dr. Christiansen retired, but, in fact, the new doctor at Dr. Christiansen's office is Dr. William Hamlin. When she listed her treating doctors on a form, she never mentioned Dr. Baxter. Johnson posits that it is likely that she confused the name Baxter from that of her Disability Examiner, Raymond Baxter. Johnson maintains that Dr. Boulden recognized her lack of mental clarity and prescribed treatment accordingly. She asserts that the

ALJ experienced Johnson's memory problems because his decision recognizes that she could not recall at her hearing what pain medication she took, and it uses this lapse to suggest that the pain levels she alleged were not supported by the evidence.

Concerning the ALJ's alleged failure to consider her chronic respiratory infections, allergies, and asthma, Johnson argues that her battle with these conditions is well documented in Dr. Gartner's treatment record and the ALJ improperly downplayed her severe impairment and the significant limitations she experiences. She maintains that Dr. Gartner has utilized almost all available treatment methods to address her chronic respiratory ailments. In his decision, the ALJ states that Johnson had a history of asthma and nasal allergies, and was taking Allegra D for allergies, and that she was treated for asthma and intermittent respiratory problems.

Finally, Johnson contends that the ALJ failed to analyze whether she would be able to maintain employment on a regular and continuing basis despite these limitations, in addition to whether she could obtain employment in the first place. She contends that this failure is reversible error.

The Commissioner responds that the ALJ's RFC determination is supported by substantial evidence. The ALJ considered Johnson's medical records before September 30, 2006, the date last insured; Dr. Christiansen, Johnson's treating physician, treated her from

December 1998 to July 2006 with prescribed medications for fibromyalgia, non-insulin dependent diabetes, asthma, and nasal allergies, and the records show that Dr. Christiansen treated her conservatively. His examination records in November 2001 and February 2004 reflect that Johnson had normal gait, balance, and reflexes, with no noted restrictions. The ALJ also considered Johnson's medical records from Dr. Gartner, observing that Dr. Gartner treated Johnson for asthma and intermittent respiratory problems, with cough, nasal congestion, and sore throat symptoms. Although Johnson was treated frequently, the records do not reflect that her treatment did not control her symptoms or that she underwent hospitalizations because her treatment regimen failed.

The ALJ also examined treatment records from Dr. Boulden. He noted Dr. Boulden's examination findings and diagnoses of fibromyalgia, chronic fatigue, and immune deficiency syndrome, and he concluded that Dr. Boulden's September 10, 2008 statement that Johnson was disabled beginning in March 2006 was not a medical opinion, but one that required familiarity with the regulations and legal standards under the Act. Because the ALJ determined that Dr. Boulden's opinion was not a medical opinion, her opinion was not entitled to controlling weight or special significance. The Commissioner contends that the regulations did not require that the ALJ discuss the factors in 20 C.F.R. § 404.1527(d) when evaluating Dr. Boulden's statement that Johnson was disabled, because these

factors only apply to medical opinions, not opinions reserved to the Commissioner.

The ALJ also concluded that the record evidence contradicted Dr. Boulden's opinion regarding Johnson's limitations prior to March 2006. Although Dr. Boulden did not begin treating Johnson until October 30, 2006, she checked boxes in a pre-prepared statement provided by Johnson's counsel indicating that, prior to March 2006, Johnson was able to lift and carry at least five pounds, stand and walk for only 30 minutes in an 8-hour workday, and sit for fewer than 6 hours in an 8-hour workday. Dr. Boulden opined that Johnson was unable to stoop or crouch, and was able to climb, balance, and crawl occasionally, but her records do not reflect any documented limitations, abnormalities of gait, or abnormal movement of Johnson's extremities, and they do not indicate that Johnson was hospitalized because her condition became uncontrollable.

The Commissioner maintains that Dr. Christiansen's records do not support Dr. Boulden's opinion, because Dr. Christiansen documented mostly normal examination findings, and he treated Johnson conservatively. The ALJ also considered conflicting testimony by Johnson when evaluating Dr. Boulden's opinion, which is another factor that an ALJ can consider. Therefore, the Commissioner posits that Johnson's contention that the ALJ did not consider the 20 C.F.R. § 404.1527(d) factors lacks merit.

The Commissioner points out that the ALJ may give less weight, little weight, or even no weight to a doctor's statement that is not supported by medically acceptable clinical laboratory diagnostic techniques or is otherwise unsupported by the evidence, and that the ALJ, not a doctor, is responsible for determining whether a claimant is disabled.

Regarding Johnson's contention that the ALJ did not consider her obesity, the Commissioner maintains that the ALJ specifically stated that he considered all of the evidence, and the ALJ's discussion of the medical evidence shows that he evaluated the evidence in the record. The Commissioner argues that Johnson did not allege in her disability application that obesity was a disabling impairment; that her medical records reported her weight, but her doctors never indicated that her obesity restricted her abilities (instead they encouraged her to exercise), and they reported mostly normal examination findings. Therefore, although the ALJ did not mention Johnson's weight or obesity, no prejudice resulted because the record does not support additional limitations due to obesity during the relevant time period.

Regarding Johnson's argument that the ALJ did not recognize that she suffered from depression, loss of memory, and other nonexertional limitations, the Commissioner argues that the ALJ observed that Johnson's testimony that depression prevented her from working was contradicted by her husband's testimony that she

stopped working due to a reduction in work force. The Commissioner challenges Johnson's argument that mistaking the name of her new physician and forgetting the name of a previous medication establishes a disabling mental condition. He maintains that the ALJ considered Johnson's allegations of disabling mental conditions and found that her allegations were inconsistent with the evidence in the record.

Concerning Johnson's argument that she was unable to work due to chronic respiratory infections, allergies, and asthma, the Commissioner argues that, in determining an individual's RFC, the ALJ must assess the nature and extent of her limitations and determine her capacity for work activity on a regular and continuing basis; that the ALJ specifically noted that an individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments; and that he specifically cited Social Security Ruling 96-8p, which explains that the RFC finding is itself a determination that the claimant can sustain employment. The Commissioner argues that, under *Frank v. Barnhart*, 326 F.3d 618, (5th Cir. 2003) (per curiam) (on rehearing), to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent her from holding a job for a significant period of time; and that *Frank* provides that an ALJ *may* explore this factual predicate in

connection with the claimant's physical diagnosis as well as in the ability-to-work determination, but that this is not mandatory. Further, according to the Commissioner, *Frank* observes that such a separate and explicit determination will not be commonplace because the question whether the claimant can maintain employment for a significant period of time is usually subsumed in the analysis regarding the claimant's ability to obtain employment, and that only on occasion will a separate consideration of ability to maintain employment be required.

The Commissioner cites *Dunbar v. Barnhart*, 330 F.3d 670 (5th Cir. 2003) (per curiam), for the premise that inherent in the RFC definition is the understanding that the claimant can maintain work at the level of her RFC. Therefore, absent evidence that a claimant's ability to maintain employment would be compromised despite her ability to perform employment as an initial matter, or an indication that the ALJ did not appreciate that an ability to perform work on a regular and continuing basis is inherent in the RFC definition, a specific finding that a claimant can maintain employment is not required. The Commissioner contends that Johnson has made no such showing regarding an inability to maintain employment. Drs. Christiansen and Gartner treated her conservatively and never stated that she could not work, and Johnson was never hospitalized due to her condition. The Commissioner contends that the ALJ was not required to make any

special finding that Johnson could maintain work.

In conclusion, the Commissioner argues that the ALJ considered all of the medical evidence regarding Johnson's impairments and properly found that she could perform a full range of light work; the ALJ, rather than the court, has the duty to resolve conflicts in the evidence; and because substantial evidence supports the ALJ's RFC finding, the court should affirm that finding.

B

"The physician who primarily treats a claimant's disabling condition is generally the most familiar with the claimant's impairments, treatments, and responses." *Bennett v. Astrue*, 2010 WL 308747, at *6 (N.D. Tex. Jan. 27, 2010) (Fitzwater, C.J.). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citations omitted). The ALJ may give little or no weight to a treating source's opinion only if good cause is shown. *Id.* at 455-56. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable . . . techniques, or is otherwise unsupported by the evidence." *Id.* at 456. "[A]bsent reliable medical evidence

from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)." *Id.* at 453. The ALJ must consider the six *Newton* factors only with respect to treating physicians' *medical* opinions, and a determination that a claimant is disabled or unable to work is a *legal* conclusion reserved to the Commissioner. *Frank*, 326 F.3d at 620 ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'" (citing 20 C.F.R. § 404.1527(e)(1)). Moreover, "[t]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).

Substantial evidence supports the ALJ's decision to assign little weight to Dr. Boulden's opinion. First, Dr. Boulden's determination that Johnson is disabled is not a medical opinion. Rather, the disability determination is a legal conclusion reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1) (2010); *Frank*, 326 F.3d at 620. Because Dr. Boulden's opinion that Johnson was disabled is a legal conclusion, instead of a medical opinion, the ALJ was not required to consider the six factors set out in § 404.1527(d) before setting aside Dr. Boulden's disability

determination.  *See id.*

Second, assuming that a *Newton* analysis was required in this case, the ALJ considered the § 404.1527(d) factors before assigning little weight to Dr. Boulden's medical opinions, and he adequately specified his reasons for according them little weight.  The ALJ took into account Johnson's treatment history with Dr. Boulden, including the duration and nature of their relationship, as well as Dr. Boulden's fibromyalgia and fatigue specialty.  He also took into account the medical evidence developed from Dr. Boulden's examinations and her prescribed treatments.  The ALJ also considered the record evidence that contradicted Dr. Boulden's opinions before assigning them little weight.  The resolution of conflicting evidence is for the Commissioner rather than for this court.  *See Patton*, 697 F.2d at 592.  And "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."  *Newton*, 209 F.3d at 455 (quoting *Paul v. Shalala*, 29 F.3d 208, 211 (5th Cir. 1994)).  The ALJ concluded that this conflicting evidence showed that Johnson's symptoms were not as limiting as alleged.  Johnson's husband testified that she stopped work as the result of a reduction in force, not due to her disability.  Further, her medical records did not show that her symptoms were as constant and unremitting as she claimed at her hearing.  And the opinions of her other treating physicians did not support Dr. Boulden's opinions that Johnson's capacity to stand,

walk, and lift light objects were so limited.  For example, her treatment records from Dr. Christiansen, who cared for her from December 1998 to July 2006 with prescribed medications for fibromyalgia, non-insulin dependent diabetes, asthma, and nasal allergies, showed that Dr. Christiansen treated Johnson conservatively; and his examination records in November 2001 and February 2004 reflected that Johnson had normal gait, balance, and reflexes with no noted restrictions.  Further, Johnson's treatment records from Dr. Gartner showed that he treated Johnson's asthma and other respiratory ailments frequently.  But the record did not demonstrate that these ailments were unresponsive to treatment or that they otherwise impaired her ability to work.

C

Johnson's contention that the ALJ improperly disregarded some of her limitations is also unavailing.  First, the ALJ did not improperly fail to consider her obesity.  An ALJ must consider impairments a claimant says she has, or about which the ALJ receives evidence, not merely those specifically alleged.  20 C.F.R. § 404.1545(a)(2) (2010).  The facts cited in the record include Johnson's height and weight: five-feet, four-inches tall and 200 pounds, at the time of her hearing, and up to 235 pounds in the three years preceding her hearing.  Johnson's previous attorney alleged obesity in his pre-hearing brief, and a number of doctors noted her obesity in their treatment records.  Although Johnson did

not specifically claim obesity in her disability application, the facts in the record gave the ALJ notice of her obesity, and he was required to consider it.

The ALJ's opinion states that he considered all of Johnson's symptoms and the extent to which they were consistent with the evidence in the record. Although the ALJ did not specifically discuss Johnson's obesity, he did not commit reversible error in declining to discuss how her weight affected her other impairments or her RFC. "Although the ALJ did not explicitly articulate or rely on any cumulative effects of [Johnson's] obesity, the record indicates that her obesity was factored into the RFC determination." *Brown v. Astrue*, 2009 WL 64117, at *4 (N.D. Tex. Jan. 12, 2009) (Fitzwater, C.J.). The ALJ adopted the suggestions of treating physicians who were aware of Johnson's obesity. *See Gannon v. Astrue,* 2008 WL 4490738, at *9 (N.D. Tex. Aug. 11) (Stickney, J.), *rec. adopted*, 2008 WL 4490738, at *1 (N.D. Tex. Oct. 3, 2008) (Godbey, J.). And Johnson testified as to her height and weight at her administrative hearing. Thus substantial evidence supports the conclusion that the ALJ properly considered Johnson's obesity in determining her RFC.

Moreover, Johnson has not shown that she was prejudiced by the ALJ's failure to mention her obesity in his decision. The ALJ limited Johnson's RFC to "'light capacity' work, which would likely be consistent with any obesity-related limitations." *Williams v.*

*Astrue*, 2010 WL 517590, at *4 (N.D. Tex. Feb. 11, 2010) (Fitzwater, C.J.). Johnson does not indicate what additional limitations she suffered as a result of obesity. "'[T]he medical record is silent as to whether and how claimant's obesity might have exacerbated her condition.'" *Gannon*, 2008 WL 4490738, at *9 (quoting *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005)). Although Johnson's brief suggests a number of ways in which obesity can *generally* aggravate other ailments, she has offered no medical opinions that her obesity had such an effect. The ALJ considered the limitations mentioned in her medical records in reaching his decision. Even if the ALJ erred in this regard, the error is not reversible. *See, e.g., Musgrove v. Astrue*, 2009 WL 3816669, at *8 (N.D. Tex. Nov. 13, 2009) (Kaplan, J.) (citing *Parker v. Barnhart*, 431 F.Supp.2d 665, 674 (E.D. Tex. 2006)) (holding that when ALJ fails to follow social security ruling, plaintiff seeking judicial review must also demonstrate prejudice resulting from that error to be entitled to relief).

The ALJ's decision regarding Johnson's nonexertional limitations and respiratory ailments is also supported by substantial evidence. The ALJ considered the evidence of Johnson's depression, as well as her husband's contrary testimony that she ceased work due to a reduction in force, not depression. "The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner]." *Kane*, 731

F.2d at 1219. Because the testimony of Johnson's husband contradicts other evidence regarding her depression, the ALJ's decision is supported by substantial evidence.

The ALJ also recognized and considered the evidence of Johnson's respiratory ailments, including her long history of frequent treatment for allergies and sinus ailments. He considered Johnson's treatment history with Drs. Gartner and Christiansen. He found that these records did not indicate that her ailments were so unremitting as to affect her ability to work; moreover, these physicians treated Johnson conservatively and did not note that her symptoms were unmanageable. Because the ALJ adequately considered all of Johnson's limitations, substantial evidence supports his RFC determination.

D

Nor is the court persuaded by Johnson's argument that the ALJ's decision is reversible for failure to consider whether she could maintain, as well as obtain, work. "In order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Frank*, 326 F.3d at 619. In the usual case, the ALJ considers this issue by determining whether the claimant can obtain employment in the first place. *Id.* The ALJ must make a separate finding regarding the claimant's ability to maintain her employment where,

"by [their] nature, the claimant's physical ailment[s] wax[] and wane[] in [their] manifestation of disabling symptoms." *Id.* A separate finding is not required unless (1) evidence suggests the "claimant's ability to maintain employment would be compromised despite [her] ability to perform employment as an initial matter," or (2) the ALJ indicates an appreciation "that an ability to perform work on a regular and continuing basis is inherent in the definition of RFC." *Dunbar*, 330 F.3d at 672.

The court holds that there is substantial evidence that Johnson's condition did not affect her ability to maintain work in a way that was different from the way it affected her ability to obtain the work in the first place. Johnson does not provide any reasons why she could not, having obtained employment, have maintained it because of her respiratory illnesses. She does not argue that these symptoms were unresponsive to treatment, or that they caused absenteeism in her previous employment. Johnson's physicians treated her respiratory ailments conservatively. Further, the ALJ did not indicate that the ability to perform work on a continuing basis was inherent in the definition of Johnson's RFC. The ALJ did not commit reversible error in failing to address specifically whether Johnson could work on an ongoing basis after having obtained employment.

Finally, Johnson contends that the ALJ's step four analysis is not supported by substantial evidence.

Johnson maintains that, in disability determinations and decisions made at step four, SSA Rulings require that the ALJ's analysis consist of three distinct findings. First, he must evaluate her RFC in light of all physical or mental limitations; second, he must determine the physical and mental demands of her past relevant work; and, third, he must determine whether she can meet the job demands in the second finding despite the limitations in the first finding. Johnson contends that although the ALJ purported to follow the SSA's ruling regarding the analysis of her ability to perform past relevant work, his finding is not supported by substantial evidence and resulted in an unfavorable disability determination. She asserts that, because of her age, a finding at step four that she is unable to perform past relevant work subjects her to the Medical-Vocational Guidelines that indicate she may be presumptively disabled. She challenges the ALJ's past relevant work finding, contending that the only work history report in the record lists the job requirements of "marketing analyst," not "marketing representative/logistics analyst," as the ALJ found. She also posits that, other than her testimony describing her inability to do so and the problems she had maintaining employment

due to her impairments, the record is devoid of any other analysis of her ability to perform her past relevant work. She contends that a remand is warranted for a more thorough explanation or for an award of benefits, given the dearth of vocational evidence or testimony contradicting her allegations and the guidance from the Medical-Vocational Guidelines.

The Commissioner responds that the ALJ properly found that Johnson could continue to perform her past relevant work. He notes that Johnson provided evidence that she had worked as a marketing representative and a budget analyst, that these jobs required her to sit for 8 hours, walk for 30 minutes, stand for 30 minutes, and lift and carry fewer than 10 pounds, and that, as the ALJ determined, this level of exertion is consistent with sedentary work. The Commissioner argues that, based on the evidence in the record from the relevant period, the ALJ properly found that Johnson was able to perform a full range of light work; that if a claimant can perform light work, she can also perform sedentary work; and that the ALJ therefore correctly found that Johnson was able to return to her past relevant work. Concerning Johnson's contention that she is presumptively disabled under the Medical-Vocational Guidelines, the Commissioner argues that these guidelines are considered at step five of the sequential evaluation process. If a claimant like Johnson is able to perform her past relevant work at step four, the sequential evaluation process

stops.  The Commissioner therefore argues that Johnson's argument is without merit.

B

"If an ALJ finds that a claimant can perform [her] past relevant work, he must make specific findings of fact regarding the claimant's RFC, the physical and mental demands of [her] past relevant work, and the claimant's 'ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one.'"  *Bennett v. Astrue*, 2010 WL 308747, at *3 (N.D. Tex. Jan. 27, 2010) (Fitzwater, C.J.) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).  Relying on *Winfrey*, and relying in part on *Latham v. Shalala*, 36 F.3d 482 (5th Cir. 1994), Johnson argues the ALJ's analysis relating her RFC to her previous employment is conclusory.  In *Latham* the court held that if the ALJ determines that the claimant can return to her prior work, he must "directly compare the applicant's [RFC] with the physical and mental demands of [her] previous work."  *Id.* at 484. The court also held that the categories "light" and "medium" work are "generic" terms that do not address all barriers to returning to past relevant work.  *Id.*  The *Latham* panel reasoned that generic analysis does not sufficiently explain how a claimant's impairments do not prevent her from returning to work.  *Id.*

The ALJ's finding that Johnson is capable of performing her sedentary past relevant work is supported by substantial evidence.

- 46 -

*Latham* requires the ALJ to "directly compare the applicant's RFC with the physical and mental demands of [her] previous work." *Latham*, 36 F.3d at 484. It does not prevent the ALJ from placing previous work in general categories so long as he also adequately compares the applicant's RFC with the demands of her previous work. The ALJ made a proper comparison here. The ALJ's decision recites the requirements of Johnson's previous employment as a "marketing representative/logistics analyst." Although Johnson disputes the ALJ's use of this title, she refers to her previous titles variously as a "senior analyst," "budget analyst," "marketing analys[]t," and "marketing representative," and her descriptions of these jobs do not conflict with the ALJ's. These descriptions included the tasks of sitting for a total of eight hours per day, walking and standing for a total of 30 minutes each, and lifting and carrying fewer than 10 pounds.

The ALJ noted that these tasks are consistent with the definition of sedentary work prescribed in 20 C.F.R. § 404.1567(a). He correctly concluded that if a claimant can perform light work, she can also perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2010). This categorical analysis does not run afoul of *Latham* because the ALJ identified the requirements of Johnson's past employment before categorizing her past work as sedentary work and concluding that her RFC allows her to perform this work. Moreover, the ALJ considered all relevant impairments in finding that Johnson

could perform her sedentary work. In *Latham* the ALJ did not consider the claimant's nonexertional limitations before determining whether they, as well as the claimant's exertional limitations, impaired the claimant's ability to complete prior work. *See Latham*, 36 F.3d at 484. In the present case, the ALJ did not similarly omit an entire category of limitations before determining that Johnson's RFC permitted her to perform the requirements of her previous employment. The ALJ thus appropriately determined that Johnson's RFC allowed her to perform light work and appropriately categorized the demands of Johnson's previous employment.

\*     \*     \*

Accordingly, for the reasons stated, the Commissioner's decision is

AFFIRMED.

November 22, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE